UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

STEPHANIE SANZ, et al.,

                                            Plaintiffs,

                     -v-

JOHNY UTAH 51 LLC *d/b/a* JOHNNY UTAH'S, et al.,

                                     Defendants.

------------------------------------------------------------------------X

14-CV-4380 (JMF)

MEMORANDUM
OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __04/20/2015__

JESSE M. FURMAN, United States District Judge:

      By letter dated March 11, 2015, the parties in this action, brought pursuant to the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and federal and state anti-discrimination

laws, advised the Court that they had agreed to a settlement in principle.  By Order entered on

the same day, the Court directed the parties to submit the settlement agreement with respect to

Plaintiffs' FLSA claims along with a joint letter explaining the basis for the proposed settlement

and why it should be approved, with reference to the factors set forth in *Wolinsky v. Scholastic,*

*Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012).  On April 9, 2015, the parties did so,

submitting the settlement agreement with respect to Plaintiffs' wage-and-hour claims — the

discrimination claims were settled pursuant to a separate agreement — and a letter requesting the

Court's approval.  Having reviewed the parties' letter, the Court finds that the settlement is fair

and reasonable, given both the nature and scope of the Plaintiffs' claim as well as the risks and

expenses involved in additional litigation. *See id.* at 335-36.

      The parties also seek the Court's approval to allocate $133,333.33 (or one third) of the

settlement fund to attorney's fees.  (April 9, 2015 Ltr. (Docket No. 119) ("Approval Request")

7).  In evaluating an attorney's fee request, a court must consider: (1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of representation; (5) the fee's relation to the settlement; and (6) public policy considerations.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  In addition to considering those factors, commonly referred to as the "*Goldberger* factors," a court may use one of two methods to calculate attorney's fees: the "lodestar" method or the "percentage of the fund" method.  *See, e.g.*, *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).  Either way, a court should be guided by the *Goldberger* factors when determining the reasonableness of attorney's fees.  *See, e.g.*, *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, No. 96-CV-583 (DAB), 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002).  After due consideration of all the *Goldberger* factors, the Court finds that the proposed attorney's fee award here, while high relative to the size of Plaintiffs' claim and recovery, is not unreasonable given counsel's actual work on the case.  *See Wolinsky*, 900 F. Supp. 2d at 336-37; *see also Thornhill v. CVS Pharmacy, Inc.*, No. 13-CV-5507 (JMF), 2014 WL 1100135, at *2-3 (S.D.N.Y. March 20, 2014) (noting that, "[i]n this Circuit, courts typically approve attorney's fees that range between 30 and 33 percent" and citing cases).

In addition, the settlement provides incentive payments of $1,000 each to named Plaintiffs Bryan Harmin, Oscar Rojas, and Juan Balbuena.  (Approval Request 9).  Courts in this Circuit have recognized that, "[i]n FLSA collective actions, just as in Rule 23 class actions, service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff."  *Diaz v. Scores Holding Co., Inc.*, No. 07-CV-8718 (THK), 2011 WL 6399468, at *3-4 (S.D.N.Y. July 11, 2011).  Before awarding an

incentive payment (also known as a service or enhancement payment), "a court must ensure that the named plaintiffs, as fiduciaries to the class, have not been tempted to receive high incentive awards in exchange for accepting suboptimal settlements for absent class members." *Ayers v. SGS Control Servs., Inc.*, No. 03-CV-9078 (RMB), 2008 WL 4185813, at *6 (S.D.N.Y. Sept. 9, 2008). Given the small size of the incentive payments (the combined payments represent less than one percent of the overall settlement) and the fact that all Plaintiffs have consented to them (Approval Request 9), the possibility of a conflict of interest between Plaintiffs Harmin, Rojas, and Balbuana and the rest of the Plaintiff collective is remote. *See, e.g., Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906 (HBP), 2014 WL 4996248, at *9-10 (S.D.N.Y. Oct. 7, 2014) (noting that incentive awards of $1,000 each to nine named plaintiffs were "well within the range of service awards recently approved in the Southern District of New York" and listing cases). Further, given the time and effort that the named Plaintiffs expended on the litigation (*see* Approval Request 9), the Court finds that the modest incentive payments are appropriate. *See Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 201 (S.D.N.Y. 1997); *accord deMunecas v. Bold Food, LLC*, No. 09-CV-0440 (DAB), 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010); *see also, e.g., Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (recognizing that service awards are "particularly appropriate in the employment context" given the risk of retaliation by a current or former employer). Accordingly, incentive payments are approved.

Finally, the Court turns to the settlement's confidentiality clause. Although the settlement would be entered publicly on the docket, the agreement provides that Plaintiffs may not disclose the settlement's terms "orally, in writing, or through any other means, including but not limited to": (1) any statements "to the media or on social media"; (2) publishing books, articles, journals or videos; or (3) publishing or posting any "blog entry, tweet, or other internet

or social media posting." (Approval Request, Ex. 1 at 9). As Judge Kaplan recently explained in

a well-reasoned opinion in *Lopez v. Nights of Cabiria, LLC*, No. 14-CV-1274 (LAK), — F.

Supp. 3d —, 2015 WL 1455689 (S.D.N.Y. March 30, 2015), however, such broad non-

disclosure agreements undermine the purpose of the FLSA "by silencing the employee who has

vindicated a disputed FLSA right." *Id.* at *5 (internal quotation marks omitted). Although the

filing of the settlement agreement on the docket allows the public to access it, "[p]ractically

speaking . . . the public filing of the settlement in this case, standing alone, is unlikely to benefit

[the] low-wage workers" that the FLSA was intended to protect, as "the best way for a worker to

learn about his or her employment rights is directly or indirectly from a co-worker or an outside

organization." *Id.* Further, the confidentiality provision here, like the one in *Lopez*, includes a

liquidated damages clause. That clause is especially problematic because the damages that

Defendants would likely suffer if Plaintiffs were to violate the confidentiality provision would be

that Defendants would have to pay other employees who decided to enforce their rights under the

FLSA. The liquidated damages clause would therefore essentially "transfer to the wronged

employee a duty to pay his fellow employees for the FLSA wages unlawfully withheld by the

employer." *Id.* at *6. Accordingly — and because the settlement agreement provides that it will

"remain in full force and effect" even if the Court "does not approve any aspect" of the

confidentiality provision "and/or modifies th[e] Confidentiality provision in any way" (Approval

Request, Ex. 1 at 9) — the Court strikes the confidentiality provision from the agreement.

   For the reasons explained above, the Court approves the settlement, without the

confidentiality provision, and dismisses the case with prejudice.

The Clerk of the Court is directed to close this case.  All pending motions are moot.  All

scheduled conferences are vacated.


      SO ORDERED.

Dated: New York, New York
      April 20, 2015

JESSE M. FURMAN
United States District Judge